IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| Amit B. Patel | ) | 18-31397 |
| | ) | Hon. Deborah L. Thorne |
| | ) | Trustee: Marilyn O. Marshall |
| Debtor, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Amit B. Patel | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 20 A |
| v. | ) | |
| | ) | |
| American Education Services, Bank of Lake Mills and American University of Antigua | ) ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER
11 U.S.C. § 523(a)(8)**

Plaintiffs, Amit B. Patel complains as follows:

### I. JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1334(b), as this action arises in, arises under, and is related to an underlying bankruptcy matter—18-31397, currently pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

2. Personal jurisdiction exists over the Defendant in accordance with Federal Rule of Bankruptcy Procedure 7004(f).

3. Under 28 U.S.C. § 1409(a), this Court is the proper venue in which to bring this action.

4. This Complaint is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

## II. FACTS AND BACKGROUND

5. Patel began attending the American University of Antigua ("AUA") in 2007 and completed his studies in 2012.

6. While he studied at AUA, American Education Services ("AES") a for-profit institution and servicer for Bank of Lake Mills, lent Patel nearly $20,670.00 in what it deemed to be student loans.

7. AES disbursed these loans in January 2009.

8. On September 28, 2017, Patel filed the underlying petition for relief under Chapter 7 of the Bankruptcy Code. This action seeks to determine that the funds received from AES do not meet the statutory requirements to be excepted from Patel's discharge.

## III. APPLICABLE STANDARDS

9. Generally, student loans cannot be discharged through bankruptcy; however, under certain circumstances, student loans *can* be included in a debtor's discharge.

10. Section 523(a) specifically states that:

   (a) A discharge under … this title does not discharge an individual debtor from any debt—

   (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

   (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

   (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or,

2

(B) any other educational loan that is a *qualified education loan*, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 ("IRC"), incurred by a debtor who is an individual…" (emphasis added).

11. Under the relevant section of the IRC, a qualified education loan is "any indebtedness incurred by the taxpayer solely to pay *qualified higher education expenses*…" I.R.C. § 221(d)(1), emphasis added. Those expenses must meet three criteria. In relevant part, the expenses

    a. Are incurred on behalf of the taxpayer;

    b. Are paid or incurred within a reasonable period of time before or after the indebtedness is incurred; and

    c. Are attributable to education furnished during a period during which the recipient was an eligible student.

    I.R.C. § 221(d)(1)(A-C).

12. Under the IRC, "qualified higher education expenses" means the cost of attendance…at an *eligible educational institution…*" I.R.C. § 221(d)(2), (emphasis added).

13. The IRC further states that "[f]or purposes of the preceding sentence [I.R.C. § 221(d)(1)], the term "eligible educational institution" has the same meaning as that found in 26 U.S.C. § 25A(f)(2). *Id.*

14. To be deemed an "eligible educational institution," an institution must "[be] described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), … **and** "*[be] eligible to participate in a program under title IV of such Act.*" 26 U.S.C. § 25A(f)(2), (emphasis added).

3

## IV. DISCUSSION

Patel attended the American University of Antigua from 2007 to 2012, and took out private loans in January 2009 *before* the school received its Title IV status.

15. Patel bases the argument in favor of dischargeability on the last point—American University of Antigua *was not* a Title IV-eligible institution during his studies and when the funds were disbursed.

16. AUA received its Title IV certification in October of 2015, after the private loans in question were disbursed to Patel, this has been confirmed by Patel's counsel having spoke to Mr. Len Sclafani, counsel for AUA who stated to counsel that AUA was not TITLE IV approved until October of 2015 and in fact did not receive any funds from the U.S. Department of Education until sometime after October of 2015, well after the private loans in question had been disbursed to Patel.

17. According to the website myamericorps.gov on the page dealing with how to determine if your school is a "qualified institution", (See Attached Exhibit page printed from website myamericorps.gov),  it defines a qualified institution as one "that participates in the U.S. Department of Education's student aid programs, (I,e., it has an agreement with the U.S. Department of Education whereby students at the school are eligible to receive federal student financial aid to attend the school).  The website goes on to say that "a school may be fully accredited and even offer graduate degrees, but unless it is a school that participates with the U.S. Department of Education in Title IV financial assistance the Eli Segal Americorps Education Award, by law, cannot be used there.  To find out if your school is a qualified institution, you can:

 a)  Ask your financial aid office if the school is a Title IV Institution.

 b) Call the toll free number 1800 433 3243 at the U.S. Department of Education's

4

Federal Student Aid Information Center.

   c) Conduct an online search at the website for the Department of Education's Federal Student Aid Information Center.

   d) Conduct an online search at the website for the Department of Education at www.fafsa.ed.gov

The website goes on to say- "If the school is listed in the list of Institutions found when you do a search after clicking on "Create Education Award", then the school is a Title IV school." AUA did not appear on this list until 2012, after the private loans were disbursed.

18. Judge Randall Dunn of the Bankruptcy Court for the District of Oregon examined this same issue in *In re Joel Nunez*, 527 B.R. 410 (Bankr. D. Or., 2015).

19. In *Nunez,* the debtor attended a flight school that did not appear on the Department of Education's Federal School Code lists for the years he attended.

20. These lists publish schools that have obtained Title-IV eligibility for that academic year.

21. Judge Dunn ruled that, as the school was not Title-IV eligible at the time the debtor took out the loans at issue, those loans did not meet the definition of a "qualified education loan" under the statute.

22. Further, Judge Dunn noted that the lender, Key-Bank, was neither a governmental unit nor a non-profit institution.

23. Therefore, Nunez's loans were not excepted from his discharge.

24. Conversely, Judge Wendy L. Hagenau did not arrive at the same conclusion as Judge Dunn when faced with a similar factual background. *See In re: Stephen Donald Cleveland*, 559 B.R. 265 (Bankr. N.D. Ga., 2016).

25. Judge Hagenau determined that Congress did not intend for loans obtained from an

an unqualified educational institution to be dischargeable solely based on their lack of Title IV status.

26. However, when Congress amended Section 523(a) in 2005, that body specifically inserted the requirement that a "qualified educational loan" **must** meet the definition found in Section 221(d)(1) of the IRC. H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005). Judge Hagenau did not cite to this record when arriving at her determination.

27. It stands to reason, then, that contrary to the finding of Judge Hagenau, Congress did specifically intend to require that for a student loan to be excepted from discharge, it meet the requirements both that it be a qualified education loan and be from a Title IV educational institution. This resulted in a stricter standard to be applied in determining dischargeability of student loans, but also clarified the standard a lender must meet to have loans excepted.

28. Moreover, the disputed loans in *Cleveland* had been made by programs funded by a governmental unit or a non-profit institution. That case is distinguishable from this one on that point.

29. Here, Patel obtained the loans at a time when AUA did not appear on the Federal School code lists. (See Exhibit #2).

30. Its absence indicates AUA did not enjoy Title-IV status at that time. AUA did not meet the definition of a "qualified educational institution" during Patel's attendance. AUA did not receive their Title IV status until 2012, after Patel's private loans were disbursed to him, this fact has been confirmed by counsel for Patel after the filing of this complaint.

31. Further, AES is a for-profit institution—as was the lender in *Nunez*, therefore failing to satisfy the elements of a dischargeable debt on that second front.

The funds were disbursed directly to Patel rather than to the University. Patel used some

of the funds to cover tuition and expenses and some of the funds to cover non-educational expenses, such as consumer goods unrelated to his education. As such, the loans in question were "mixed use loans", and therefore dischargeable.

32. Under the relevant section of the IRC, a qualified education loan is "any indebtedness incurred by the taxpayer solely to pay *qualified higher education expenses…*" I.R.C. § 221(d)(1), emphasis added. Those expenses must meet three criteria.

In relevant part, the expenses

a. Are incurred on behalf of the taxpayer;

b. Are paid or incurred within a reasonable period of time before or after the indebtedness is incurred; and

c. Are attributable to education furnished during a period during which the recipient was an eligible student. I.R.C. § 221(d)(1)(A-C).

33. Under the IRC, "qualified higher education expenses" means the cost of attendance…at an eligible educational institution..." I.R.C. § 221(d)(2).

A recent article exploring the dischargeability of private student loans accurately explored the question recently stating;

"According to section 221(d)(1) of the Internal Revenue Code ("IRS Code"), loans qualifying for the tax deduction must be incurred solely to pay for "qualified higher education expenses." The definition of these expenses is broad. The term "qualified higher education expenses" as used in section 221(d)(1) of the IRS Code incorporates the definition of "cost of attendance" at an educational institution from the Higher Education Act of 1965.

7

The IRS Code does not set specific limits on these costs, referring instead to the Higher Education Act and its definition of appropriate costs "as determined by the institution." Significantly, to qualify for the tax deduction, the indebtedness must be "incurred by the taxpayer solely to pay qualified higher education expenses." The Treasury Department regulations implementing section 221(d)(1) explain what is meant by the term "solely to pay qualified higher education expenses." Loans meeting this standard are distinguished from "mixed-use" loans:

"Mixed-use loans": Student J signs a promissory note for a loan secured by Student J's personal residence. Student J will use part of the loan proceeds to pay for certain improvements to Student J's residence and part of the loan proceeds to pay qualified higher education expenses of Student J's spouse. Because Student J obtains the loan not solely to pay qualified higher education expenses, the loan is not a qualified education loan. (Law Review Art Citation)

Consistent with the above example, cash advances, revolving lines of credit, and credit card debt should not be considered qualified education loans unless the total debt consists of credit incurred solely to pay for qualifying education expenses. In In re Creeger the court considered whether an individual's use of his credit card to pay qualified educational expenses for an unrelated acquaintance could create a non-dischargeable student loan debt. Although the court found that it could not decide the merits of the question based on the state of the summary judgment record, the court noted that evidence of use of the same credit card to pay for education expenses and to pay for charges not related to education could affect the outcome. The court suggested that, if a lending institution made a series of extensions of credit, some of which covered educational costs while others did not, the series of transaction could create a single dischargeable debt. In re Creeger, 2016 WL 3049972 (Bankr. N.D. Ohio May 20, 2016) (examining whether a "qualified education loan" was created when an individual used his credit card to pay for an acquaintance's qualified education expenses to

8

attend an eligible educational institution (the University of Toledo); not deciding on existing record whether section 523(a)(8)(B) would apply to educational loan from individual unrelated to debtor).

Under the pre-BAPCPA Bankruptcy Code the courts were not sympathetic to arguments that attempted to avoid the reach of section 523(a)(8) by focusing on the use of the proceeds from government-related loan programs for non-academic purposes. However, for private loans covered by the new subsection (B), how the funds were used is a relevant issue. The IRS guidelines defer to educational institutions to define their costs of attendance. Private loans that fund expenses beyond what the educational institution determines to be the reasonable costs of attendance should be considered "mixed use" loans and therefore wholly dischargeable. Typically, educational institutions develop these cost estimates for use in financial aid assessments, so the reasonable-cost-of-attendance information for a particular institution should be publicly available." 5

Because Patel, and not the school, was the recipient of the proceeds, they were not disbursed directly to the school to pay for qualified education expenses, but rather were used by Patel, at least in part, to pay for non- educational purposes on items such as living expenses, consumer goods and food.   The loans then do not meet the definition of a qualified education loan as defined by the statute and are therefore a dischargeable debt.

When Congress amended Section 523(a) in 2005, that body specifically inserted the requirement that a "qualified educational loan" **must** meet the definition found in 6

Section 221(d)(1) of the IRC. H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005). Congress did specifically intend to require that for a student loan to be excepted from discharge, it meet the requirements both that it be a qualified education loan and for the student to have attended a Title IV educational institution. This resulted in a stricter standard to be applied in determining dischargeability of student loans, but also clarified the standard a lender must meet to have loans excepted.

The loans in question here were *not* made by programs funded by a governmental unit or a non-profit institution, and as the lender in this case is a for profit institution, AES fails to satisfy the elements required for dischargeability on that front. Therefore, AES has not met each of the required standards to claim the disbursed funds should be considered a qualified education expense, and therefore excepted from discharge.

34. AES has not met each of the required standards to claim the disbursed funds should be considered a qualified education expense, and therefore excepted from Patel' discharge.

35. Patel requests this Court enter an order determining the debt allegedly owed to AES are in fact not a qualified education expense, and therefore they are included in the discharge Patel received in the underlying bankruptcy action.

Dated: August 6, 2020          Respectfully Submitted:

         */s/Raffy A. Kaplan*
         Raffy A. Kaplan
         Attorney for Debtor

Raffy A. Kaplan
Kaplan Bankruptcy Firm, LLC
25 East Washington St. Suite 1501
Chicago, IL 60602
ARDC 6275234